**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **INTERMED RESOURCES TN LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-01112** |
| | ) | **Judge Aleta A. Trauger** |
| **GREEN EARTH TECHNOLOGIES** | ) | |
| **LLC and DOUG MALLONEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM and ORDER**

Before the court is the Motion to Stay (Doc. No. 15) filed by defendants Green Earth Technologies LLC ("Green Earth") and Doug Mallonee. Citing the doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the defendants seek a stay pending resolution of an action previously filed by defendant Green Earth against plaintiff InterMed Resources TN LLC ("InterMed") in the Circuit Court for Mobile County, Alabama (the "Alabama Action"). For the reasons discussed herein, the motion will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

InterMed filed the Complaint initiating this case in the Circuit Court for Williamson County, Tennessee on November 18, 2020. (Complaint, Doc. No. 1-2.) The defendants removed the case to federal court on December 30, 2020 based on diversity jurisdiction, 28 U.S.C. § 1332. (Doc. No. 1, at 2.)[1]

[1] The Complaint alleges that InterMed is a Tennessee corporation with its principal place of business in Brentwood, Tennessee; that Green Earth is an Alabama corporation whose principal place of business is in either Alabama or Tennessee; and Mallonee is a citizen and resident of

Broadly, the dispute concerns a written agreement executed on March 29, 2020 by and between InterMed as buyer and Green Earth as seller for the purchase of "an initial order" of 3,000,000 units of 3M N-95 respirator masks. (Doc. No. 1-2 Ex. A ("Contract").) Shipments of the product were to begin in April 2020. (Contract ¶ 8.) The price per unit was $5.00. (*Id.* ¶ 11.) The contract required "prepayment of 100% promptly against proforma invoice." (*Id.* ¶ 12.) Upon execution of the Contract, InterMed wired Green Earth an initial deposit in the amount of $1.5 million. (Complaint ¶ 12.)

According to the Complaint, the defendants had represented, and the Contract required, that an initial shipment of masks would be made in April 2020, but no such shipment was made. (*Id.* ¶ 13.) Over the course of the two months following execution of the Contract, the parties' representatives had numerous conversations regarding the initial missed shipment and continuing delays. (*Id.* ¶ 14.) On May 8, 2020, InterMed's CEO, Roger Biles, informed Green Earth's President and CEO, Doug Mallonee,[2] that, if the initial shipment was not received by Wednesday, May 13, 2020, InterMed would demand a refund of the payment it had already made, because InterMed had already had to refund money to its third-party vendors that had pre-ordered N-95 masks from InterMed. (*Id.* ¶ 15.) InterMed did not receive the masks by May 13 and still has not received them to date, but it also has not received a refund of the payment it made. (*Id.* ¶ 16.)

Based on these allegations, InterMed filed the Complaint asserting claims against both Green Earth and Mallonee for breach of contract, fraudulent misrepresentation, intentional

---

Alabama. (Doc. No. 1-2 ¶¶ 1–4.) The amount in controversy is well in excess of $75,000. (*See, e.g.*, *id.* ¶ 20.)

[2] The Complaint does not identify Mallonee's relationship with Green Earth other than to state that he is its agent for service of process. (*Id.* ¶¶ 2, 3.) Mallonee's signature block in an email exchange attached to the Complaint identifies him as Green Earth's President and CEO. (Doc. No. 1-2, at 16.)

interference with business relationships with third parties, and intentional interference with contracts with third parties.

On March 17, 2021, the defendants filed their Motion to Stay and supporting Memorandum of Law (Doc. Nos. 15, 16), in which they assert that Green Earth filed a complaint ("Alabama Complaint") against InterMed, initiating the Alabama Action, on May 13, 2020. (*See* Doc. No. 15-1.) The Alabama Complaint alleges that InterMed, not Green Earth, committed the first material breach of the same Contract upon which InterMed's claims are based and asserts claims under state law for breach of contract and anticipatory repudiation of contract. It also requests a judicial declaration that the Contract is valid and enforceable, that InterMed is not entitled to a refund of any portion of the $1.5 million it paid to Green Earth, and that InterMed is obligated to submit to Green Earth full payment of the agreed-upon purchase price. (*Id.* at 7.) There is some controversy about when and whether the Alabama Complaint and summons were actually served upon InterMed, but it appears that InterMed received a courtesy copy of the Alabama Complaint in June 2020 and was formally served no later than December 2020. (*See* Doc. No. 25-2, at 1 (June 11, 2020 email from Mallonee to Biles); Doc. No. 25-3, at 27 (certified mail return receipt).)

In their present motion, the defendants argue that the Alabama Action is a previously filed "parallel action" and that the case before this court should be stayed pursuant to the *Colorado River* doctrine. The plaintiff has filed a Memorandum of Law in Opposition to the Motion to Stay ("Response") (Doc. No. 18), arguing that the Alabama Action is not parallel and that, even if it is, the other relevant factors do not weigh in favor of a stay. The defendants have filed a Reply. (Doc. No. 25.)

## II. APPLICATION OF THE *COLORADO RIVER* DOCTRINE

### A. Legal Standard

"Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). This rule "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* Nonetheless, as the Supreme Court also recognized in *Colorado River*, circumstances do exist permitting the dismissal of a federal suit "due to the presence of a concurrent state proceeding." *Id.* at 818. However, "[o]nly the clearest of justifications will warrant" abstention from the exercise of concurrent jurisdiction by the district court. *Id.* at 819.

In what has come to be known as the *Colorado River* doctrine (or *Colorado River* abstention), the Sixth Circuit has identified the factors to be considered by a district court in deciding whether the pendency of a "parallel" state court proceeding will justify a federal district court's abstention from exercising jurisdiction over a case before it. Most importantly, "[b]efore the *Colorado River* doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). Assuming that threshold question is answered affirmatively, the court must then consider and weigh a number of factors to determine whether abstention is warranted, including: (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained and the relative progress of the state and federal proceedings; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; and (7) the presence or absence of concurrent jurisdiction. *See id.* at 340–41 (citations omitted).

The court does not reach these factors, because the cases are not parallel.

**B. The Cases Are Not Parallel**

As the Supreme Court has explained:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the *complete and prompt resolution of the issues between the parties*. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). "If a state court action and a federal action are truly parallel, resolution of the state court action will also resolve *all issues* in the federal action." *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 603 (W.D. Tenn. 2011) (emphasis added). On the other hand, "[c]ases are not considered parallel if there is an issue that would not be resolved by the state court upon the completion of the state court action." *Walker v. Cedar Fair, L.P.*, No. 3:20cv2176, --- F. Supp. 3d ---, 2021 WL 661514, at *4 (N.D. Ohio Feb. 19, 2021) (quoting *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 688 (W.D. Ky. 2010)); *see also* 17A Moore's Federal Practice § 122.06[1] (Matthew Bender 3d ed.) ("The presence of additional parties or claims in one case does not necessarily preclude a finding that the suits are parallel. The critical determination is whether the non-federal litigation will dispose of all claims raised in the federal court action."). Generally, courts agree that suits are not parallel when "the remedies sought and the legal theories advanced differ." *Poston v. John Bell Co.*., No. CIV A 5:07CV00757, 2008 WL 4066254, at *2 (S.D.W. Va. Aug. 27, 2008) (citing *Nat'l Textiles v. Daugherty*, 250 F. Supp. 2d 575, 577–78 (M.D.N.C. 2003); *Covance Labs., Inc. v. Orantes*, 338 F. Supp. 2d 613, 616 (D. Md. 2004)).

Such is the case here.[3] As indicated above, the Alabama Complaint asserts only contract-based claims: breach of contract, anticipatory repudiation of contract, and a request for a declaratory judgment as to the validity of the operable Contract and the appropriate remedy for breach. (Doc. No. 15-1.) The Complaint in this case, however, sets forth tort claims in addition to the breach of contract cause of action, including claims for fraudulent misrepresentation, intentional interference with contracts, and intentional interference with business relations. The legal elements of these causes of action require proof outside of that required to prove breach of contract. *Compare Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) ("In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach."), *with Dog House Invs., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) ("Actions for fraud contain four primary elements: (1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false—that the misrepresentation was made knowingly or recklessly or without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and resulting damages; (4) that the misrepresentation relates to an existing or past fact." (internal quotations marks and citation omitted)). Further, the damages awarded for these tort claims are, in theory at least, distinct from those arising from breach of contract. In particular, the plaintiff asserts that it is entitled to treble damages for inducement of breach of contract (Complaint, Doc. No. 1-2, at 9), presumably based on Tenn. Code Ann. § 47-50-109. Such damages would not be authorized or available in the Alabama Action.

---

[3] In response to the Motion to Dismiss, the plaintiff simply asserts that there is "a substantial doubt that the Alabama action will offer a complete resolution between the parties, most importantly, because specifically Doug Mallonee is not named a party to the Alabama suit." (Doc. No. 18, at 5.) That fact alone, however, is not dispositive of the relevant question, as the plaintiff actually acknowledges.

Consequently, resolution of the contract-based claims in the Alabama Action will not necessarily completely resolve the tort claims asserted in this case. To be sure, the court has serious reservations regarding the validity of the plaintiff's tort claims, but the defendants did not couple their Motion to Stay with a motion to dismiss inadequately pleaded claims, as a result of which the court is not called upon, at this juncture, to address whether the tort claims are adequately pleaded and actually could stand alone if the breach of contract claims are resolved. Instead, the court finds that the actions are not completely parallel, as a result of which abstention under *Colorado River* is not warranted.

## III. CONCLUSION AND ORDER

For the reasons set forth herein, the defendants' Motion to Stay (Doc. No. 15) is **DENIED**.

The initial case management conference is **RESET** for May 12, 2021 at 2:00 p.m.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge