UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| INTERMED RESOURCES TN, LLC, ) | |
| ) | |
| Plaintiff/Counter Defendant, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-01112 |
| ) | Judge Aleta A. Trauger |
| ) | |
| GREEN EARTH TECHNOLOGIES, LLC ) | |
| and DOUG MALLONEE, ) | |
| ) | |
| Defendants/Counter Plaintiffs. ) | |

**MEMORANDUM & ORDER**

Doug Mallonee has filed a Motion for Summary Judgment (Doc. No. 40), to which InterMed Resources TN, LLC ("InterMed") filed a Response (Doc. No. 44), and Mallonee has filed a Reply (Doc. No. 48). Green Earth Technologies, LLC ("Green Earth") has filed a Motion for Partial Summary Judgment (Doc. No. 43), to which InterMed filed a Response (Doc. No. 47), and Green Earth has filed a Reply (Doc. No. 49). For the reasons set out herein, the motions will be granted.

**I. BACKGROUND**

This case arises out of the scramble to obtain high-quality, name-brand particulate-blocking masks during the early days of the COVID-19 pandemic. On March 29, 2020, InterMed, which sells medical equipment to hospitals, entered into a contract to buy 3,000,000 3M[1] N-95 masks from Green Earth for a price of $15,000,000. (Doc. No. 45 ¶¶ 1–2.) As part of the agreement, the parties executed a "proforma" invoice that was incorporated into the contract by reference. (*Id.* ¶ 4.) The invoice identified the "date of shipment" as "TBI," meaning "to be

---

[1] The combination of the quantity of masks sought and the brand name of those masks can be confusing in this case. The contract was to buy 3 million masks manufactured by the company 3M.

informed." (*Id.* ¶ 7.) The parties agree, for the purposes of this motion, that "[t]he Contract and Invoice constituted the entire written agreement as of March 29, 2020." (*Id.* ¶ 5.)

According to InterMed CEO and principal Roger Biles and Biles' Chief of Staff, Steve Gill, Green Earth President and CEO Doug Mallonee represented to them in a telephone conversation that Green Earth "had [the] masks ready to sell and deliver," such that they could be sent to InterMed "within ten (10) days of the receipt of payment." (Doc. No. 46-2 ¶ 5; 46-1 ¶ 5.) Green Earth denies that it made any representation that it was in physical possession of the masks, which, the parties agree, would not have been true. (Doc. No. 45 ¶ 10.) Rather, on March 29, 2020—the same day that Green Earth and InterMed executed their agreement—Green Earth "placed an order with a third-party vendor, Global Management Services, LLC ('Global')," to have the masks shipped directly to InterMed. (*Id.* ¶ 8; *see* Doc. No. 40-4 ¶ 6.) Green Earth maintains that Global assured Mallonee that it "could acquire 3,000,000 3M N-95 particulate masks from an authorized 3M distributor, TBS Business Solutions USA, Inc. ('TBS')," which had successfully filled at least one such order for Global before. (Doc. No. 45 ¶ 8.)

As part of this litigation, Biles was deposed as InterMed's corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (*See* Doc. No. 40-9.) During that deposition, Biles described Mallonee's allegedly fraudulent representations as follows:

> He told us that he had already purchased the masks and that they— he was in ownership of them, not in possession of them, I'll make that clear. So he said that he had already purchased them and they were going to be delivering, and he was going to assign the deliveries of our masks to my warehouse.

(*Id.* at 46.) The crux of the disagreement between the parties, therefore, appears to have both a general and a specific component. Generally, InterMed argues that Mallonee falsely represented Green Earth's ability to fill the order and do so in a timely manner. More specifically, InterMed

2

argues that Mallonee falsely claimed to have already purchased the masks, when in fact he did not place the order until the day of the contract.[2]

On April 1, 2020, Green Earth paid Global $1,740,000 toward its purchase of the masks for InterMed. (*Id.* ¶ 9.) A few days later, on April 6, 2020, InterMed paid Green Earth $1,500,000 towards its downstream purchase of those same masks from Green Earth. (*Id.* ¶ 11.) On April 15, 2020, Mallonee received a letter from Global's legal counsel, Huynh & Huynh, PLLC, confirming the fact that "Global currently enjoys a relationship with [TBS], an authorized 3M distribution center." (*Id.* ¶ 12; Doc. No. 40-7.) The letter included, as an attachment, a letter from TBS to Global confirming the existence of "pending purchase order transactions." (Doc. No. 40-7 at 2.) The accompanying documentation stated that the "estimated delivery date" for the shipment of masks from TBS to Global was June 18, 2020. (Doc. No. 45 ¶ 12.) On April 16, 2020, Green Earth forwarded that correspondence and materials to Biles and Gill at InterMed. (*Id.* ¶ 13.)

The deal between Green Earth and InterMed ended up falling through. InterMed never paid the full $15,000,000, and, according to InterMed, Green Earth "failed to deliver a single mask." (*Id.* ¶ 11.) On November 18, 2020, InterMed sued Green Earth and Mallonee in Williamson County, Tennessee Circuit Court, stating four counts. (*See* Doc. No. 1-2 at 2–10 (Complaint).) Count I is for breach of contract. Count II is for fraudulent misrepresentation. Count III is for intentional interference in business relationships, based on Green Earth's supposed interference with InterMed's relationships with third-party vendors. Count IV is for intentional interference with contracts, based on a similar theory. (*Id.* ¶¶ 17–39.) Green Earth and

---

[2] InterMed attempts to create an additional dispute by relying on Declarations of Gill and Biles stating that Mallonee told them that Green Earth "had" the masks when the contract was signed. (Doc No. 46-1 ¶¶ 5, 8; Doc. No. 46-2 ¶¶ 5, 8.) Those Declarations conspicuously do not clarify whether "had" is intended to mean "physically possessed" or "had purchased and could direct delivery of." The Rule 30(b)(6) testimony, however, wholly resolves that ambiguity in favor of the latter interpretation.

3

Mallonee removed the case to this court, and Green Earth asserted counterclaims for breach of contract and, in the alternative, anticipatory repudiation of contract. (Doc. No. 1; Doc. No. 28 ¶¶ 15–27.)

On July 15, 2022, Mallonee filed a Motion for Summary Judgment (Doc. No. 40), which was followed by a separate Motion for Partial Summary Judgment on behalf of Green Earth on July 20, 2022 (Doc. No. 43). Neither movant denies that there is a legitimate contract dispute between InterMed and Green Earth. Mallonee argues that he is entitled to summary judgment because InterMed has not identified any basis for holding him liable in his personal capacity. Green Earth argues that the court should grant it summary judgment as to InterMed's claims based on theories of liability other than contract, as well as InterMed's request for punitive damages. InterMed has conceded, in its Response to Mallonee's motion, that he is entitled to summary judgment as to Counts I, III, and IV, leaving Count II—for fraudulent misrepresentation—as the only disputed cause of action regarding Mallonee. (Doc. No. 44 at 1.) InterMed similarly conceded that Green Earth is entitled to summary judgment as to Counts III and IV and InterMed's request for punitive damages related to Count I, leaving Count II as the only cause of action under consideration. (Doc. No. 47 at 1.)

## II. LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th

Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

### III. ANALYSIS

Whether a company committed fraud and whether an individual executive of that company committed fraud are distinct questions that may lead to different answers. In this particular instance, however, the two issues, as they have been presented to the court, are effectively the same. In short, Green Earth and Mallonee argue that (1) InterMed cannot show that Mallonee (or any other representative of Green Earth) made any knowingly false or misleading representation to InterMed on which InterMed reasonably relied and (2) InterMed's claims are barred by Tennessee's[3] "economic loss doctrine." InterMed disputes both arguments on the merits and argues that any defense based on the economic loss doctrine was waived.

#### A. Elements of Fraud

"[T]he Tennessee Supreme Court [has] explained that the terms 'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' all refer to the same tort . . . ."

---

[3] InterMed has not disputed the applicability of Tennessee law to the relevant claims.

5

*Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (citing *Hodge v. Craig*, 382 S.W.3d 325, 342–43 (Tenn. 2012)). The elements of such a claim are:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Id.* (quoting *Hodge*, 382 S.W.3d at 343).

With regard to Mallonee's allegedly false representation that Green Earth was capable of fulfilling the contract, Green Earth and Mallonee argue that InterMed has failed to identify any evidence that would support a conclusion that any such representation was knowingly false when it was made. Green Earth and Mallonee are correct. All of the evidence before the court suggests that Green Earth and Mallonee contemporaneously believed that they were capable of fulfilling InterMed's order by purchasing masks from Global. There is simply no evidence in the record that Green Earth or Mallonee knew or should have known, as of the date the contract was signed or InterMed made its payment, that the masks would not be available or would be delayed. *See Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (noting that, for a promise of future action to be fraudulent, it must be made "without the present intention to carry out the promise") (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

With regard to the more specific issue of the timing of the order to Global, InterMed has not identified any evidence that would permit a finder of fact to conclude that InterMed reasonably relied on any such misrepresentation to its detriment. There is no evidence to suggest that the issue of whether Green Earth had actually placed its order ahead of time—say, on March

6

Case 3:20-cv-01112 Document 50 Filed 09/27/22 Page 6 of 11 PageID #: 425

28, 2020, instead of March 29, 2020—had any effect on the ultimate collapse of the deal. Insofar as Mallonee's statement regarding the timing of the purchase could be considered a misrepresentation, therefore, there are no facts sufficient to permit the conclusion that it was fraudulent. Green Earth and Mallonee are therefore entitled to summary judgment as to Count II.

**B. Economic Loss Doctrine**

The economic loss doctrine is a "judicially-created remedies principle," most often applied in products liability litigation, "that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 142 (Tenn. 2021) (quoting *Plourde Sand & Gravel v. JGI E.*, Inc., 154 N.H. 791, 793 (2007)). The "relatively recent vintage" of this "judicially-created rule" has resulted in some uncertainty regarding its scope, including with regard to whether fraud is included in the torts barred by the doctrine's application. *Id.* at 142, 145–51. The Tennessee Supreme Court recently confirmed that the doctrine does apply to some claims sounding in fraud, but it declined to "resolv[e] the broad question" of whether narrower exceptions for some types of fraud may exist, and it acknowledged that the state's current caselaw does not definitively resolve whether the doctrine applies outside the products liability context at all. *Id.* at 153, 155 (quoting *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 194 (Utah 2018)).

InterMed argues, first, that Green Earth and Mallonee have waived any reliance on the economic loss doctrine by failing to plead it as an affirmative defense in their Answer. Rule 8(c) of the Federal Rules of Civil generally requires defendants to "affirmatively state any avoidance or affirmative defense" in their first response to a pleading, and the failure to do so may (but does not necessarily) result in waiver of the defense. *See Brent v. Wayne Cnty. Dep't of Hum.*

7

Case 3:20-cv-01112   Document 50   Filed 09/27/22   Page 7 of 11 PageID #: 426

*Servs.*, 901 F.3d 656, 680 (6th Cir. 2018) (citing *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004); *Kennedy v. City of Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986)); *but see Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 5586729, at *14 (E.D. Tenn. Nov. 20, 2017) ("[F]ailure to raise an affirmative defense by responsive pleading does not always result in waiver.") (quoting *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997)). It is undisputed that the Answer filed by Green Earth and Mallonee did not specifically plead an affirmative defense based on the economic loss doctrine.

Green Earth and Mallonee argue, however, that the economic loss doctrine is not an affirmative defense and therefore was not required to be separately pleaded in the Answer. "An affirmative defense, under the meaning of Fed. R. Civ. P. 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *Roberge v. Hannah Marine Corp.*, 124 F.3d 199 (Table), 1997 WL 468330, at *3 (6th Cir. Aug. 13, 1997). If a defense merely negates a necessary element of a claim, there is no need to plead it separately pursuant to Rule 8. As Green Earth and Mallonee point out, a number of courts have concluded that the economic loss doctrine is not an affirmative defense requiring specific pleading. *See, e.g.*, *Keokuk Glycerin, LLC v. Midwest Lab'ys, Inc.*, No. 3:14-CV-111-JAJ-HCA, 2015 WL 12866981, at *3 (S.D. Iowa May 22, 2015) (collecting cases).

That said, it would be a stretch to say that the doctrine merely relies on negating an element of liability. The very premise of the economic loss doctrine is that, without that doctrine, there would be many situations that would technically support a tort recovery, despite having a clear gravamen in contract. *See Milan Supply Chain Sols., Inc.*, 627 S.W.3d at 150 (observing that the "blurring of the line between tort and contract law is precisely what the economic loss

8

rule is designed to prevent") (quoting *HealthBanc Int'l, LLC*, 435 P.3d at 197). That dynamic—in which the elements of a claim are technically present, but a doctrine intercedes to preclude liability—certainly resembles a conventional affirmative defense.

In any event, the court finds that, even if the economic loss doctrine is typically an affirmative defense that should be separately pleaded, no waiver occurred in this case. "Where [a] matter is raised in the trial court in a manner that does not result in unfair surprise[,] technical failure to comply precisely with Rule 8(c) is not fatal." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983)). It is difficult to see how there has been any unfair surprise or prejudice here. The issues underlying the economic loss doctrine—that is, the nature of the damages incurred and the question of whether there was any injury attributable to fraud that was distinct from the alleged breach of contract—have been an inherent part of this case from the start. InterMed has not identified any necessary discovery that it would have pursued if it had been expressly informed that the economic loss doctrine would be at issue, nor does the record reveal any reason to assume that any such discovery would have been necessary. The court accordingly finds no waiver.[4]

Whether the economic loss doctrine is applicable to this case is a more difficult question. The Tennessee Supreme Court, unlike the courts of a number of other states, "has never applied the economic loss doctrine outside the products liability context." *Milan Supply Chain Sols., Inc.*, 627 S.W.3d at 153; *see id.* at 144–45 (discussing other states' expansion of the economic loss

---

[4] The court also notes that, at the time that the Answer was filed in May of 2021 (Doc. No. 28), the scope of the economic loss doctrine in Tennessee was quite vague. That scope is still uncertain, including with regard to whether the doctrine should apply to these claims, but it was clarified significantly between the filing of the Answer and the filing of the pending motions. *See Milan Supply Chain Sols., Inc.*, 627 S.W.3d at 142–55 (8/2/21). That change in the law also militates against a finding of waiver.

doctrine). In the wake of the Tennessee Supreme Court's partial clarification of the doctrine in 2021, the Tennessee Court of Appeals held that it does extend, if not to all civil claims, at least to some non-products liability claims involving "contracts negotiated between sophisticated commercial entities." *Com. Painting Co. Inc. v. Weitz Co. LLC*, No. W2019-0208-9COA-R3-CV, 2022 WL 737468, at *1 (Tenn. Ct. App. Mar. 11, 2022). The Court of Appeals, however, acknowledged the unsettled nature of that question, *id.* at *12–24, and, last month, the Tennessee Supreme Court granted permission to appeal that determination, with instructions to focus on whether the Court of Appeals erred in expanding the economic loss doctrine. *Com. Painting Co. Inc. v. Weitz Co. LLC,* No. W2019-02089-SC-R11-CV, 2022 WL 3149615 (Tenn. Aug. 4, 2022).

This is a case between two commercial entities about products that never arrived, not products that were defective, making it squarely within the zone of cases that might—or might not—implicate the economic loss doctrine, depending on the course of Tennessee's rapidly developing caselaw on the subject. Given that InterMed's inability to establish the elements of fraud is independently sufficient to support summary judgment, the court will not venture an "*Erie* guess"[5] regarding what the Tennessee Supreme Court will or would decide. The question of whether the economic loss doctrine applies to a claim based on undelivered goods is better saved for a case that actually requires that question to be answered. These motions for summary judgment, however, would be granted regardless, and the court will leave it at that.

## IV. CONCLUSION

For the foregoing reasons, Mallonee's Motion for Summary Judgment (Doc. No. 40) and Green Earth's Motion for Partial Summary Judgment (Doc. No. 43) are hereby **GRANTED**. Mallonee is **GRANTED** summary judgment as to all claims against him, and Green Earth is **GRANTED** summary judgment as to Counts II, III, and IV and punitive damages related to

---

[5] "*Erie* guess" refers to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Count I. InterMed's claim for breach of contract against Green Earth and Green Earth's counterclaims are the only claims that remain pending.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge